# No. 15-1041

# In the United States Court of Appeals for the Fourth Circuit

————————

**CERES MARINE TERMINALS, INC.,**

*Petitioner/Appellant,*

**v.**

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, SAMUEL P. JACKSON,**

*Respondents/Appellees.*

————————

**On Petition for Review of an Order of the Benefits Review Board**

————————

**BRIEF OF APPELLEE SAMUEL P. JACKSON**

————————

Ira M. Steingold, Esq.
Steingold & Mendelson
1510 Breezeport Way, Suite 300
Suffolk, VA 23435
Telephone 757-393-7300
Email ira@steingold-mendelson.com

Attorney for Respondent/Appellee Samuel P. Jackson

Dated:  March 25, 2015

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1041__          Caption: __Ceres Marine Terminals v. Jackson__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Samuel Jackson__
(name of party/amicus)


who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                            ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
      If yes, identify all such owners:


10/28/2013 SCC                               - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____1/20/15_____

Counsel for: _____Samuel Jackson_____

## CERTIFICATE OF SERVICE
*****************************

I certify that on ___January 20, 2015___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Lawrence P. Postol, Esq.
Seyfarth Shaw
975 F Street, N.W.
Washington, D.C. 20004-1454

_____          _____1/20/15_____
            (signature)                              (date)

- 2 -

# **TABLE OF CONTENTS**

APPELLEE'S SUMMARY OF THE ARGUMENT.................................................1

ARGUMENT ..........................................................................................................2

    A.    POST TRAUMATIC STRESS DISORDER .......................................2

    B.    EMPLOYER'S ERRONEOUS ZONE OF DANGER
           TEST THEORY ..................................................................................7

    C.    PAUL MANSHEIM, MD, UNRELIABLE MEDICAL
           REPORT................................................................................................11

CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

Adams v. Metro Machine,
Ren. Rev. Bd. Nos. 98-0550 and 98-0550A, (Jan. 1999) (unpub.)..........................8

American National Red Cross v. Hagen,
327 F.2d 559 (7th Cir. 1964) ...................................................................8

Amos v. Director, OWCP,
153 F.3d 1051 (9th Cir. 1998)...................................................................4

Bath Iron Works Corporation v. Preston,
380 F.3rd 597 (2004) ...............................................................................5

Bath Iron Works Corps v. Preston,
380 F.3d 597, 38 BRBS 60 (CRT) (1st Cir. 2004) .....................................8

Dierker v. Gypsum Transportation,
606 F. Supp. 566-569 (1985) ...................................................................8

Dir. OWCP v. Potomac Electric Power Co.,
607 F.2d 1378 (D.C. Cir. 1979)................................................................8

El-Kurd v. Global Linguist Solutions,
45 BRBS 1065 (ALJ) (December 21, 2011) ..............................................6

Elliott v. C&P Telephone Co.,
16 BRBS 89 (1984)..................................................................................7

Franklin v. Service Employees International, Inc.,
OALJ No. 2009-LDA-00431, 43 BRBS 987 (ALJ) (December 3, 2009) ...........5, 6

Grigg v. Director, OWCP,
28 F.3d 416, 420 (4th Cir. 1994)..............................................................4

H.T. v. Service Employees International, Inc.,
41 BRBS 1321 (ALJ) (December 10, 2007) ..............................................6

Harrison v. Todd Pacific Shipyards Corp.,
21 BRBS 339 (1988)................................................................................7

In the Matter of T.S. v. Northrop Grumman-Avondale Industries,
40 BRBS 664 (August 14, 2006)...........................................................6

Kelaita v. Triple A Machine Shop,
13 BRBS 326 (1981)...........................................................................6

King v. Califano,
615 F.2d 1018, 1020 (4th Cir. 1980)......................................................4

Lazarus v. Chevron, USA,
958 F.2d 1297, 1299, 5th Cir. (1992).....................................................6

Louisiana Insurance Guaranty Association v. Abbott,
40 F.3rd 122, 125 (5th Cir. 1994) .........................................................7

Marino v. Navy Exchange,
20 BRBS 166 (1988)...........................................................................8

Merrill v. Todd Pacific Shipyards Corp.,
25 BRBS 140 (1991)...........................................................................6

Morrison-Knudsen Construction Co. v. Director, OWCP,
461 U.S. 624, 636, 15 BRBS 155, 159 (CRT) (1983)................................7

Newport News Shipbuilding & Dry Dock Co. v. Winn,
326 F.3d 427, BRBS 29, (CRT) (4th Cir. 2003)................................3, 11

Pedroza v. Benefits Review Board,
624 F.3d 926, 931 (9th Cir. 2010)......................................................7, 8

Peter v. Hess Oil Virgin Islands Corp.,
903 F.2d 95, reh'g denied, 910 F.2d 1179 (3rd Cir. 1990),
cert. denied, 498 U.S. 1067 (1991))......................................................7

Potomac Electric Power Co. v. Director, OWCP,
449 U.S. 268, 14 BRBS 363 (1980) ......................................................7

Sanders v. Alabama Dry Dock,
22 BRBS 340 (1989)........................................................................7, 8

Sewell v. Noncommissioned Officers' Open Mess,
32 BRBS 127, 128 (1997)..................................................................7, 8

Stevens v. Tacoma Boat Building Co.,
23 BRBS 191 (1990)...................................................................................6

Sylvester v. Bethlehem Steel Corp.,
14 BRBS 234, 236 (1981)..........................................................................6

Tampa Ship Repair & Dry Dock v. Director, OWCP,
535 F.2d 936, 5th Cir. (1976).....................................................................6

## Statutes

Longshore and Harbor Workers' Compensation Act,
33 U.S.C. Section 901, et. seq...............................................................2, 9

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| CERES MARINE TERMINALS, INC. | ) | |
| | ) | |
| Petitioner/Appellant, | ) | |
| | ) | |
| v. | ) | No. 15-1041 |
| | ) | |
| OWCP, DIRECTOR, AND SAMUEL P. JACKSON, | ) | |
| | ) | |
| | ) | |
| Respondents/Appellees. | ) | |

## BRIEF OF THE APPELLEE SAMUEL P. JACKSON

COMES NOW Respondent/Appellee, Samuel Paul Jackson, by counsel, and submits to this Brief as follows, to-wit:

## <u>APPELLEE'S SUMMARY OF THE ARGUMENT</u>

Samuel Paul Jackson sustained the compensable injury of post traumatic stress disorder when Samuel Paul Jackson was directly involved in a gruesome and horrific accident on the waterfront at the ship loading and unloading terminal in Portsmouth, Virginia on March 28, 2011.

Norbert I. Newfield, Ph.D., and Deborah Georgi-Guarnieri, M.D., are treating, healthcare providers whose medical opinions are entitled to great weight. The absurd medical opinion of the non-treating physician, Paul Mansheim, M.D., is to be given no weight. Paul Mansheim, M.D., was not a treating physician; and Dr. Paul Mansheim's medical conclusion is wrong. Dr. Mansheim met with Samuel

Paul Jackson for a one-time evaluation only. Dr. Mansheim's own objective test results that were graded by an objective testing company outside of the office of Dr. Mansheim revealed Samuel Paul Jackson suffered from post traumatic stress disorder; yet, Dr. Mansheim erroneously wrote a medical opinion stating that Samuel Paul Jackson did not suffer from post traumatic stress disorder.

The Zone of Danger Test is not applicable to workers' compensation as codified under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Section 901, *et. seq.* The Zone of Danger Test is a negligence related test. Negligence in unrelated to workers' compensation and compensability under the Longshore and Harbor Workers' Compensation Act, supra. In any event, Samuel Paul Jackson, was directly involved in the gruesome and horrific accident of March 28, 2011 as Samuel Paul Jackson was the driver of the fork lift machine which fork lift was directly involved in the accident of March 28, 2011. The Zone of Danger Test is not applicable to workers' compensation compensability under the Longshore and Harbor Workers' Compensation Act, supra.

## ARGUMENT

### A.    POST TRAUMATIC STRESS DISORDER

Samuel Paul Jackson incorporates by reference all findings and conclusions of the Benefits Review Board Decision and Order dated November 25, 2014, at pages 12-15, 17 of the Joint Appendix as if set forth verbatim. (Joint Appendix pp

- 2-

12-15, 17) (<u>Newport News Shipbuilding & Dry Dock Co. v. Winn</u>, 326 F.3d 427,

433, 37 BRBS 29, 33 (CRT) (4th Cir. 2003).)

In the written Opinion of Judge Kenneth A. Krantz, dated November 13,

2013, Judge Krantz stated on Page 29:

> *"I place greater weight on Dr. Newfield's opinion that
> claimant suffers from a severe psychological impairment,
> because it is supported by claimant's credible complaints
> and Dr. Thrasher's opinion.  Both Dr. Thrasher and Dr.
> Newfield diagnosed claimant with PTSD in well-
> documented and well-reasoned opinions.  In addition,
> these reports reflect claimant's consistent complaints of
> isolation, sleep disturbance, vivid dreams, flashbacks,
> anxiety, and depression.  Claimant provided consistent
> accounts of the accident and his resultant psychological
> symptoms to medical professionals and those involved in
> his claim for benefits.  I place significant weight on Dr.
> Newfield's opinion because it is complimented by Dr.
> Thrasher's report and reflects claimant's credible
> complaints.  As I place the greatest weight on Dr.
> Newfield's opinion, I find that claimant is suffering from
> work-accident PTSD."*

The employer hired Dr. Mansheim to interview claimant long after claimant

had been undergoing treatment by a treating medical psychologist and a treating

medical psychiatrist, to-wit: Dr. Newfield and Dr. Giorgi-Guarnieri.  Judge Krantz

opined in his Opinion of November 13, 2013, at Pages 27-28, to-wit:

> *"I place substantially less weight on Dr. Mansheim's
> opinion than I do on Dr. Newfield's opinion.  First, in
> determining the weight to be given to conflicting medical
> opinions, one factor that may be considered is whether a
> physician rendering an opinion is the claimant's treating*

- 3-

*physician. In Black Lung Cases, the Fourth Circuit, whose authority is controlling in this case, has stated that a treating physician is entitled to 'great, although not necessarily dispositive weight.' <u>Grigg v. Director, OWCP</u>, 28 F.3d 416, 420 (4th Cir. 1994); <u>King v. Califano</u>, 615 F.2d 1018, 1020 (4th Cir. 1980). The considerations in Longshore cases are nearly identical. In Longshore cases, the opinion of the treating physician is generally accorded greater weight, as the treating physician is employed to cure and has the opportunity to know and observe the claimant. <u>Amos v. Director, OWCP</u>, 153 F.3d 1051, 1054 (9th Cir. 1998). Dr. Newfield began treating Claimant in July of 2011 and continues to treat Claimant, meeting with him once or twice per week. (CX 2 at 1-147). Accordingly, in forming his opinion, Dr. Newfield had the benefit of observing Claimant's condition over an extended period of time. Dr. Newfield's well-reasoned and well-documented letters and records indicate a more comprehensive understanding of Claimant's psychological condition. By contrast, in forming his opinion that Claimant is likely malingering, Dr. Mansheim relied on a one hour interview, a standardized test called a Personality Assessment Inventory, and various medical records. (EX 11 at 1). I note that one of Dr. Newfield's documents should have been obtained through deposition with cross-examination and not through a report. Nevertheless, I find that the treating physician considerations are more important than the format of the evidence. I find that it is appropriate to place more weight on the opinion of Dr. Newfield, the treating health care provider, as he has observed Claimant's psychological status on a once or twice per week basis, rather than during a one-hour interview."*

On March 28, 2011, claimant was involved in an industrial accident in Portsmouth, Virginia, while employed by Ceres Marine Terminals, Inc. The

mechanism of injury and the discussion of the horrific nature of the accident were well-documented at the hearing on June 19, 2013. The transcript reveals in great detail the traumatic events of March 28, 2011, wherein claimant was driving a forklift on the pier and the claimant ran over and killed a fellow employee by accident. The mangled body of the deceased employee was visible for a substantial period of time immediately following the accident until rescue personnel removed the decedent by ambulance.

The medical evidence reveals that Margaret M. Stiles, MD, Deborah Georgi-Guarnieri, MD., and Norbert I. Newfield, Ph.D., diagnosed and treated claimant for Post Traumatic Stress Disorder related to the March 28, 2011, accident involving claimant. Claimant had no prior history of Post Traumatic Stress Disorder. The employer sought a second opinion from Patrick D. Thrasher, MD, on two (2) occasions, to-wit: September 14, 2011, and April 23, 2012. Dr. Thrasher opined that claimant's current diagnosis as it relates to claimant's work injury of March 28, 2011, was Post Traumatic Stress Disorder under Axis I. The case law in Bath Iron Works Corporation v. Preston, 380 F.3rd 597 (2004), reveals that Post Traumatic Stress Disorder is a disability which is compensable as a result of claimant having been called names and mentally harassed at work (without physical contact). (Franklin v. Service Employees International, Inc., OALJ No. 2009-LDA-00431, 43 BRBS 987 (ALJ) (December 3, 2009); H.T. v. Service

- 5-

Employees International, Inc., 41 BRBS 1321 (ALJ) (December 10, 2007).) Claimant has established a *prima facie* case of a compensable injury supporting a claim for compensation because claimant (1) sustained physical harm or pain, and (2) an accident occurred in the course of employment or conditions existed at work which could have caused the harm or pain. (Kelaita v. Triple A Machine Shop, 13 BRBS 326 (1981); Merrill v. Todd Pacific Shipyards Corp., 25 BRBS 140 (1991); Stevens v. Tacoma Boat Building Co., 23 BRBS 191 (1990).)

Please see all of claimant's medical records introduced into evidence by claimant. "It is well settled that psychological impairment can be an injury under the Act if it is work-related." (Lazarus v. Chevron, USA, 958 F.2d 1297, 1299, 5th Cir. (1992)) "Where a work-related accident has psychological repercussions, it is also compensable." (Tampa Ship Repair & Dry Dock v. Director, OWCP, 535 F.2d 936, 938 5th Cir. (1976); In the Matter of T.S. v. Northrop Grumman-Avondale Industries, 40 BRBS 664 (August 14, 2006); El-Kurd v. Global Linguist Solutions, 45 BRBS 1065 (ALJ) (December 21, 2011).)

Claimant's subjective complaints of symptoms which are deemed credible can be sufficient to establish the element of physical harm necessary for a *prima facie* case and the invocation of Section 20(a) presumption. (Franklin v. Service Employees International, Inc., *supra*; Sylvester v. Bethlehem Steel Corp., 14 BRBS 234, 236 (1981).)

- 6 -

Claimant has established a *prima facie* case of total disability as the medical records reveal claimant is unable to return to his regular or usual employment due to his work-related injury. (Elliott v. C&P Telephone Co., 16 BRBS 89 (1984); Harrison v. Todd Pacific Shipyards Corp., 21 BRBS 339 (1988); Louisiana Insurance Guaranty Association v. Abbott, 40 F.3rd 122, 125 (5th Cir. 1994).)

## B.    EMPLOYER'S ERRONEOUS ZONE OF DANGER TEST THEORY

Samuel Paul Jackson incorporates by reference all findings and conclusions of the Benefits Review Board Decision and Order dated November 25, 2014, at pages 6-12, 17 of the Joint Appendix as if set forth verbatim. (Joint Appendix pp 6-12, 17) (Morrison-Knudsen Construction Co. v. Director, OWCP, 461 U.S. 624, 636, 15 BRBS 155, 159 (CRT) (1983); Potomac Electric Power Co. v. Director, OWCP, 449 U.S. 268, 281-82 & n.24, 14 BRBS 363, 368-69 & n. 24 (1980); Peter v. Hess Oil Virgin Islands Corp., 903 F.2d 95, reh'g denied, 910 F.2d 1179 (3rd Cir. 1990), cert. denied, 498 U.S. 1067 (1991).)

Judge Krantz stated in his November 13, 2013, Opinion at Page 22, to-wit:

> *"It is well-settled that a psychological impairment which is work-related is compensable under the Act. Pedroza v. Benefits Review Board, 624 F.3d 926, 931 (9th Cir. 2010); Sanders v. Alabama Dry Dock, 22 BRBS 340, 342 (1989). The Section 20(a) presumption is applicable in psychological injury cases. Sewell v. Noncommissioned Officers' Open Mess, 32 BRBS 127, 128 (1997). When the case involves an allegation of stressful working*

> *conditions, the claimant is not required to show unusually stressful conditions. The administrative law judge must determine whether employment events, which could have caused the harm sustained by claimant, in fact occurred. <u>Bath Iron Works Corps v. Preston</u>, 380 F.3d 597, 606, 38 BRBS 60 (CRT) (1st Cir. 2004)."*

Judge Krantz concludes in his Opinion dated November 13, 2013, at Page 23, to-wit:

> *"The court in <u>Dierker v. Gypsum Transportation</u> [606 F. Supp. 566-569 (1985)] analyzed whether a longshoreman was entitled to disability benefits when he sustained a psychological injury after observing a coworkers' death. Id. At 567. The court characterized the filing for benefits under the Longshore Act as a 'negligence action.' Therefore, the court borrowed the zone of danger test from the Restatement (Second) of Torts. Despite the characterization by the U.S. District Court in <u>Dierker</u>, longshore cases are not negligence actions. <u>Adams v. Metro Machine</u>, Ren. Rev. Bd. Nos. 98-0550 and 98-0550A, slip op, at 5 (Jan. 1999) (unpub.). Therefore, general negligence principles or principles derived from acts such as the Federal Employees Liability Act are often inapposite. Longshore case law has established that a claimant can obtain benefits for a work-related psychological injury. See <u>Pedroza v. Benefits Review Board</u>, 624 F.3d 926, 931 (9th Cir. 2010); <u>Dir. OWCP v. Potomac Electric Power Co.</u>, 607 F.2d 1378 (D.C. Cir. 1979); <u>American National Red Cross v. Hagen</u>, 327 F.2d 559 (7th Cir. 1964); <u>Sewell v. Noncommissioned Officers' Open Mess</u>, 32 BRBS 127, 128 (1997); <u>Sanders v. Alabama Dry Dock</u>, 22 BRBS 340, 342 (1989); <u>Marino v. Navy Exchange</u>, 20 BRBS 166 (1988). It would be contrary to the purposes of The Act to carve out a negligence law based exception whereby claimants are not entitled to benefits if they are emotionally harmed without being physically harmed or*

- 8-

> *threatened with physical harm. I therefore reject Employer's contention that a claimant cannot recover for psychological injury unless he sustains a physical injury or is placed in immediate risk of harm."*

The claimant, Samuel Paul Jackson, is a longshoreman engaged in an extremely, inherently dangerous employment. There is a massive amount of machinery, containerized cargo tonnage, and personnel moving in all directions at all times while loading and unloading ocean-going cargo vessels.

The employer erroneously contends that the zone of danger test ought to be applied in the case at bar. The zone of danger test is related solely to that area of the law where the defendant is negligent. In the case at bar, claimant was subject to the Longshore and Harbor Workers Compensation Act wherein negligence has no legal significance. That is, negligence is never an issue in a Longshore and Harbor Workers' Compensation Act matter. The employer attempts to erroneously argue the zone of danger test in relation to "maritime law". It is clear, and it is well-settled, that the "maritime law" the employer refers to is that area of "maritime law" that involves negligence. Once again, negligence is not associated with the Longshore and Harbor Workers Compensation Act. Although the Longshore and Harbor Workers Compensation Act might involve "water", the Longshore and Harbor Workers Compensation Act is not associated with either "maritime law" or with the doctrine of negligence.

- 9-

Mr. Jackson, claimant in the case at bar, suffered a ***physical impact* when claimant's forklift made physical contact with the fellow worker** and the fellow worker died.  In addition, claimant was in immediate risk of physical harm while operating a forklift on a very busy pier in a very dangerous workplace.  The testimony was clear that all kinds of motorized machinery from large trucks to forklifts carrying containerized cargo in large, heavy metal containers were moving in multiple directions with heavy loads during the loading and unloading of a huge ocean-going vessel. There were additional personnel on the ground who were guiding cranes filled with containerized cargo weighing substantial tons.  The cranes were moving containerized cargo weighing substantial tons from the ground up and from the ship down and over the pier to the berthed ocean-going vessel while claimant was operating a forklift underneath the cranes and behind the cranes which cranes were moving extremely heavy containerized cargo.   All witnesses testified that there were a large number of people operating very dangerous equipment on the pier at the time of the accident on March 28, 2011.

All persons on the pier were hired by Ceres Marine Terminals, Inc., to load and unload a large ocean-going containerized cargo vessel which was 900 feet in length as testified to by claimant at the June 19, 2013, hearing before the U.S. Department of Labor Benefits Review Board.   Ceres Marine Terminals, Inc., employees were on the pier and vessel on March 28, 2011, at the time of the

accident. Loading and unloading an ocean-going containerized cargo vessel on March 28, 2011, was a huge, complicated, and dangerous operation controlled solely by Ceres Marine Terminals, Inc.

Even if a fellow worker was not operating a piece of equipment, that fellow worker presented a dangerous situation because the claimant would be required to maneuver around those individuals who might not be operating equipment, but might be impediments to the operation of mechanized equipment carrying substantial, unstable, and heavy loads. It is a miracle, and only through the tremendous skill of the working longshoremen, that more injuries have not occurred over the decades considering the intensely dangerous working conditions on the pier loading and unloading ocean-going vessels.

Clearly, claimant, Samuel Paul Jackson, is a longshoreman engaged in an extremely, inherently, dangerous employment.

### C.     PAUL MANSHEIM, MD, UNRELIABLE MEDICAL REPORT

Samuel Paul Jackson incorporates by reference all findings and conclusions of the Benefits Review Board Decision and Order dated November 25, 2014, at pages 12-15, 17 of the joint Appendix as if set forth verbatim. (Joint Appendix pp 12-15, 17) (Newport News Shipbuilding & Dry Dock Co. v. Winn, 326 F.3d 427,433, 37 BRBS 29, 33 (CRT) (4th Cir. 2003).)

Claimant had been treated by Dr. Stiles, Dr. Newfield, and Dr. Giorgi-Guarnieri for Post Traumatic Stress Disorder after having concluded that claimant developed Post Traumatic Stress Disorder as a result of the March 28, 2011, accident. Claimant was evaluated by Dr. Thrasher at the request of the employer; and Dr. Thrasher concluded that claimant developed Post Traumatic Stress Disorder as a result of the March 28, 2011, accident.

Because the employer in the case at bar was unhappy with the results of all of the medical opinions of the providers listed above, the employer convinced the District Director to appoint Paul Mansheim, MD, to provide a medical examination of claimant, Samuel Paul Jackson. On November 15, 2012, Paul Mansheim, MD, evaluated Mr. Jackson at the request of the District Director. Dr. Mansheim prepared a report of said evaluation on December 8, 2012. The employer has placed the December 8, 2012, report of Dr. Mansheim into evidence. Dr. Mansheim's report is unreliable on its face. Dr. Mansheim evaluated Mr. Jackson on November 15, 2012. Dr. Mansheim then requested that Mr. Jackson return to the office of Dr. Mansheim approximately a week later to complete a personality assessment inventory on November 21, 2012. In his deposition, which is in evidence, Dr. Mansheim stated that he was not competent to perform the personality assessment inventory, and he had his Ph.D., partner perform it. In addition, Dr. Mansheim testified that neither he nor his partner graded the

personality assessment inventory, but, rather, they sent the personality assessment inventory out of town to be graded by a computer.

Dr. Mansheim testified in his deposition that the personality assessment inventory results were an integral part of the written report dated December 8, 2012. Therefore, the resulting report of December 8, 2012, of Dr. Mansheim contains information pertinent to his report of which Dr. Mansheim concedes he does not have first-hand knowledge and of which Dr. Mansheim concedes he is not competent to administer or interpret. Rather, Dr. Mansheim relies on some test conducted by someone other than himself and on graded results performed by someone or something "out of town." Therefore, the December 8, 2012, report of Dr. Mansheim is based on information which is wholly speculative. In his own words, Dr. Mansheim was not competent to administer the personality assessment inventory, nor was he able to grade or interpret the personality assessment inventory. It is, therefore ludicrous that Dr. Mansheim relied so heavily on the personality assessment inventory in his report of December 8, 2012.

Further, Dr. Mansheim had no authority to require additional testing as the mandate from District Director Magyar was solely to interview claimant and file a report. To proceed beyond the mandate of District Director Magyar was improper on the part of Dr. Mansheim. With this additional hearsay information arbitrarily gathered by persons or entities other than Dr. Mansheim and included in the

- 13-

December 8, 2012, report, makes the December 8, 2012, report a violation of the mandate of District Director Magyar.

Dr. Newfield opined, after having reviewed the December 8, 2012, medical report of Dr. Mansheim, that Dr. Mansheim was not correct in Dr. Mansheim's opinion. Rather, Dr. Newfield pointed out the absurdity of the conclusion of Dr. Mansheim.   (See Claimant's Medical Records Designation, Dr. Newfield Tab, January 7, 2013 Report.)

Dr. Mansheim opined that a claimant needed to see the actual accident in order to develop Post Traumatic Stress Disorder.  In the case at bar, Dr. Newfield opined that claimant was a part of the accident on March 28, 2011, and within seconds of the accident claimant viewed the horrific scene of carnage, which carnage was accidentally caused by the claimant.

Further, the Honorable Judges of the U.S. Court of Appeals for the Fourth Circuit will note that the personality assessment inventory recognized that claimant suffered Post Traumatic Stress Disorder under Axis I.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## <u>CONCLUSION</u>

Samuel Paul Jackson prays the Honorable Judges of the United States Court of Appeals for the Fourth Circuit affirm the Decision and Order of the Benefits Review Board dated November 25, 2014. (Joint Appendix pp 6-17).


Dated:  March 25, 2015                    Samuel P. Jackson
        Suffolk, Virginia

                                       By:___/s/ Ira M. Steingold_____
                                       Ira M. Steingold, Esq., VSB No. 17437
                                       Steingold & Mendelson
                                       1510 Breezeport Way, Suite 300
                                       Suffolk, VA 23435
                                       Telephone (757) 393-7300

                                       *Counsel for Respondent/Appellee*
                                       *Samuel P. Jackson*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *Brief of Appellee Samuel P. Jackson* was served via first class mail, postage prepaid, this 25th day of March, 2015, upon the following*:*

Lawrence P. Postol, Esq.
Seyfarth Shaw, LLP
975 F Street, N.W.
Washington, DC 2004-1454
*Counsel for Petitioner/Appellant*


Mark Reinhalter, Esquire
Associate Solicitor
U.S. Department of Labor
200 Constitution Avenue, NW
Suite N-2117, NDOL
Washington, DC 20210


Mr. Samuel Paul Jackson
Respondent/Appellee
130 Wyoming Avenue
Portsmouth, VA 23701
*Respondent/Appellee*


/s/ Ira M. Steingold
Ira M. Steingold, Esq.

*Counsel for Respondent/Appellee*
*Samuel P. Jackson*

- 16-

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. 15-1041          **Caption:** Ceres Marine Terminals, Inc. v. Director, OWCP, et al.

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   ☑ this brief contains _____3,377_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this brief has been prepared in a proportionally spaced typeface using
   Microsoft Word _____ [*identify word processing program*] in
   Times New Roman, 14 point font [*identify font size and type style*]; **or**

   ☐ this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) /s/ Ira M. Steingold, Esq. _____

Attorney for Samuel P. Jackson _____

Dated: 03/25/2015 _____